[No. S032755. June 6, 1994.]

HAL BERNSON, Plaintiff and Appellant, v.
BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC., et al.,
Defendants and Respondents.

928

COUNSEL

Iverson, Yoakum, Papiano & Hatch, Neil Papiano, Patrick McAdam and Zachary J. Winner for Plaintiff and Appellant.

William L. Winslow, McClintock, Weston, Benshoff, Rochefort, Rubalcava & MacCuish, Steven W. Westcon, David W. Lamb, Steven J. Vining, Tamara G. Edwards and Brian C. Whitten for Defendants and Respondents.

OPINION

ARABIAN, J.—May the authors of an allegedly defamatory writing who conceal their identities be equitably estopped from pleading the statute of limitations in a libel action? We conclude that equitable considerations may justify an estoppel where the libeled individual neither knew, nor through the exercise of reasonable diligence should have discovered, the identity of the authors. In light of our conclusion, we shall remand the matter for a determination of the question of plaintiff's diligence and related issues.

## I. FACTS

The trial court in this matter sustained a demurrer and granted a summary judgment on the same ground, to wit, that the action was barred by the

statute of limitations. In reviewing the demurrer, we accept as true all material allegations of the complaint. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) In reviewing the summary judgment, we independently examine the supporting and opposing papers to determine whether they reveal any material issue of fact and whether the moving party was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

During the latter half of 1988, Hal Bernson, a member of the Los Angeles City Council, became aware that he was the subject of a highly critical dossier circulating among the Los Angeles media. The 36-page document, entitled "Los Angeles Councilman Hal Bernson—An Analysis of City/Campaign Financial Travel 1983-1988," stated that Bernson had used campaign funds and charged the City of Los Angeles for expenses, including "extensive personal travel" in Europe and Asia, which were "unusual" and "legally questionable." Nothing in the document identified its author, sponsor or distributor.

As explained in his opposition papers, although Bernson managed to obtain a copy of the report, he had no information as to the identity of the parties behind it until February 6, 1990. On that date, two reporters for the Los Angeles Times informed Bernson during the course of an interview that they understood the report had been prepared by defendant Browning-Ferris Industries of California, Inc. (BFI). Bernson immediately contacted H. Randall Stoke, legal counsel to BFI, to confirm the reporters' statements. Stoke, however, denied any knowledge of the report or its source. Several days later, Attorney Stoke sent a letter to the Los Angeles Times (copy to Bernson) in which Stoke emphatically denied that his client, BFI, had any responsibility "direct or indirect" for the preparation of the report. Further, Stoke demanded that the Times retract its attribution of authorship to BFI and "advise councilman Bernson that BFI was not . . . involved in any such matter."

Accepting Attorney Stoke's representations, Bernson alleges that he remained unenlightened of the report's authorship until late May 1991. At that time, another Los Angeles Times reporter informed Bernson's chief deputy that an independent political consultant, defendant Mark Ryavec, had prepared the dossier on behalf of BFI. Based on this information, Bernson concluded that Stoke's previous representations of BFI's noninvolvement had been false. Less than one year later, Bernson filed the instant libel action against BFI, Mark Ryavec and Lynn Wessell (the political consultants who

allegedly prepared the report) and Les Bittenson (the BFI employee who allegedly hired Ryavec and Wessell).[1]

The trial court sustained without leave to amend defendant Ryavec's demurrer on the basis of the one-year statute of limitations applicable to Bernson's tort claims (Code Civ. Proc., § 340, subd. (3)) and entered a judgment of dismissal. The remaining defendants (BFI, Bittenson and Wessell) answered and then moved for summary judgment also on the ground that the action was time-barred. The trial court granted the motion and entered judgment in favor of BFI, Bittenson and Wessell. The Court of Appeal affirmed. We granted Bernson's petition for review.

## II. DISCUSSION

Bernson contends here, as he argued below, that defendants should be estopped from asserting the statute of limitations because they affirmatively concealed the fact that they had commissioned, authored, and disseminated the allegedly defamatory dossier. The statute was equitably tolled, in Bernson's view, until he was able to discover the identity of the responsible parties in May 1991. Thus, his action—filed within one year thereof—should be deemed timely.

Defendants respond that Bernson's cause of action accrued no later than when he learned of the defamatory report in late 1988, and that neither Bernson's ignorance nor defendants' concealment of their responsibility for the report tolled the statute. Bernson's proper recourse, defendants argue, was to file a timely action as soon as he discovered the defamatory writing, naming fictitious "Doe" defendants pursuant to Code of Civil Procedure section 474, initiate discovery to identify the actual defendants, and then amend the complaint to specify the defendants' real names. Had he followed this course, the amendment would have "related back" to the date of the filing of the original complaint and would not have been barred by the statute of limitations. (*Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 150-151 [216 Cal.Rptr. 405, 702 P.2d 563]; *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 602-603 [15 Cal.Rptr. 817, 364 P.2d 681].)[2]

---

[1]The complaint also stated causes of action for intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and conspiracy. Unless otherwise indicated, all of those named in the complaint will be referred to hereafter as "defendants."

[2]Defendants assume that the filing of a complaint naming *only* Doe defendants would trigger the normal discovery procedures. Without purporting to decide the issue, we note that this confidence may be misplaced. The discovery rules provide that a plaintiff may not serve a deposition notice until at least 20 days after "the service of summons on, or appearance by,

## A. General Principles

To evaluate and resolve this dispute requires a brief review of certain settled principles. The statute of limitations usually commences when a cause of action "accrues," and it is generally said that "an action accrues on the date of injury." (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].) Alternatively, it is often stated that the statute commences "upon the occurrence of the last element essential to the cause of action." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421]; *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 899 [218 Cal.Rptr. 313, 705 P.2d 886].) These general principles have been significantly modified by the common law "discovery rule," which provides that the accrual date may be "delayed until the plaintiff is aware of her injury and its negligent cause." (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1109.)

A close cousin of the discovery rule is the "well accepted principle . . . of fraudulent concealment." (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 99 [132 Cal.Rptr. 657, 553 P.2d 1129].) "It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." (*Ibid.*) Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale "is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action." (*Id.* at p. 100, italics omitted; see also *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231-232 [153 P.2d 325].)[3]

 Consistent with these principles, a cause of action for libel generally accrues when the defamatory matter is published (*Strick* v. *Superior Court* (1983) 143 Cal.App.3d 916, 922 [192 Cal.Rptr. 314]); under the

---

*any defendant.*" (Code Civ. Proc., § 2025, subd. (b)(2), italics added.) A court order based on a showing of good cause is required for the plaintiff to take the deposition during the first 20 days after service of summons. (*Ibid.*) Furthermore, while the plaintiff may, under extremely limited circumstances, obtain discovery before an action has been filed to preserve testimony, such extraordinary procedures may not be employed "for the purpose either of ascertaining the possible existence of a cause of action or a defense to it, or of identifying those who might be made parties to an action not yet filed." (Code Civ. Proc., § 2035, subd. (a).) Accordingly, the remedy urged by defendants may be illusory.

[3]The rule of fraudulent concealment is applicable whenever the defendant intentionally prevents the plaintiff from instituting suit; the rule applies whether or not the action itself is based on fraud. (*Pashley* v. *Pacific Elec. Ry. Co., supra,* 25 Cal.2d at pp. 231-232.)

discovery rule, however, the date of accrual may be delayed where the defendant's actions hinder plaintiff's discovery of the defamatory matter. (See *Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725 [152 Cal.Rptr. 27]; *McNair* v. *Worldwide Church of God* (1987) 197 Cal.App.3d 363, 379 [242 Cal.Rptr. 823]; see also *Cain* v. *State Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310, 314-315 [132 Cal.Rptr. 860] [claim for violation of right to privacy accrues upon discovery of the invasion].)

### B. *Ignorance of Defendants Identity*

 While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute. (See *Gale* v. *McDaniel* (1887) 72 Cal. 334, 335 [13 P. 871]; *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1114.) As we have observed, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly* v. *Eli Lilly Co.*, *supra*, 44 Cal.3d at p. 1110.) Aggrieved parties generally need not know the exact manner in which their injuries were "effected, nor the identities of all parties who may have played a role therein." (*Teitelbaum* v. *Borders* (1962) 206 Cal.App.2d 634, 639 [23 Cal.Rptr. 868].)

Although never fully articulated, the rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers. As we explained in *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d 1103 (rejecting the plaintiffs assertion that her ignorance of the particular manufacturer of the drug which caused her injuries tolled the statute): "[P]laintiff could have filed a timely complaint under [Code of Civil Procedure] section 474, which allows suit to be filed against a Doe party. From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant. [Citations.] Hence, in the instant case, plaintiff could have brought a timely Doe action, effectively enlarging the statute of limitations period for three years." (*Id.* at p. 1118.)[4] Because the plaintiff in *Jolly* was aware of some of the manufacturers, she could have utilized the normal procedure of filing suit against them, naming

---

[4] Code of Civil Procedure section 583.210, subdivision (a), provides that the summons and complaint shall be served upon a defendant within three years after the complaint is filed. When the complaint is amended to substitute the true name of the defendant for the fictional

Doe defendants, and then taking discovery to identify the remainder. That, indeed, is the normal situation for which the fictitious name statute, Code of Civil Procedure section 474, is designed: when the plaintiff is ignorant of the name of "*a* defendant," the plaintiff must file suit against the known wrongdoers, and, when the Doe's true name is discovered, the complaint may be amended accordingly. (Code Civ. Proc., § 474.)

The question here, however, is whether the general rule should apply when, as a result of the defendant's intentional concealment, the plaintiff is not only unaware of the defendant's identity, but is effectively precluded as a practical matter from ascertaining it through normal discovery procedures. May a thief, for example, who leaves no clues to his identity defeat an action by the rightful owner to recover the stolen property if the owner fails to find and serve the culprit within the applicable limitations period? Should the anonymous perpetrator of an assault and battery be immune from the victim's civil damage action after the time for identifying and serving Doe defendants has been exhausted? Or, alternatively, should the defendants in these circumstances be estopped from capitalizing upon their own misconduct under an equitable rule, akin to the rule of fraudulent concealment, which would toll the statute until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the defendant's identity?

Although we have not previously considered the issue as framed, the question has been addressed in several other jurisdictions. The problem arises not infrequently when the owner of stolen artwork discovers its whereabouts many years after the theft and files an action to recover the property. This was the situation in *Autocephalous Greek-Orthodox Church* v. *Goldberg* (S.D.Ind. 1989) 717 F.Supp. 1374, affirmed *sub nom. Autocephalous Church* v. *Goldberg & Feldman Arts* (7th Cir. 1990) 917 F.2d 278. A Greek Orthodox church had been vandalized during the Turkish occupation of Cyprus in 1978 and a number of valuable mosaics removed. Ten years later the mosaics resurfaced in an Indiana art gallery. The church brought a replevin action in federal court and the art dealer moved for summary judgment on the basis of the six-year Indiana statute of limitations. The district court denied the motion on the ground, inter alia, that the equitable doctrine of fraudulent concealment tolled the running of the statute until the church discovered, or through the exercise of reasonable diligence should have discovered, the location of the mosaics. (717 F.Supp. at pp. 1387-1388, 1391-1392.) "[T]he Court concludes that as long as the plaintiff is duly

name, the amended complaint "relates back" to the timely original complaint and hence is not barred by the statute of limitations. (*Barrington* v. *A. H. Robins Co.*, *supra*, 39 Cal.3d at pp. 150-151; *Austin* v. *Massachusetts Bonding & Insurance Co.*, *supra*, 56 Cal.2d at p. 603.)

diligent, the inability to discover the possessor of the stolen mosaics invokes the doctrine of fraudulent concealment and tolls the running of the statute of limitations for replevin purposes." (*Id.* at pp. 1392-1393, fn. 12.) The Court of Appeals affirmed, observing that in the context of a replevin action for concealed works of art, "a plaintiff cannot be said to have 'discovered' his cause of action until he learns enough facts to form its basis, which must include the fact that the works are being held by another and who, or at least where, that 'other' is." (917 F.2d at p. 289; see also *O'Keeffe* v. *Snyder* (1980) 83 N.J. 478 [416 A.2d 862, 870] [holding that an artist's replevin action for paintings stolen 30 years earlier did not accrue until she discovered, or through the exercise of reasonable diligence should have discovered, "the identity of the possessor of the paintings"].)[5]

The Supreme Court of Wisconsin adopted a similar rule in a personal injury action for assault, observing: "A statute of limitations barring relief to victims before the defendant is, or could be, discovered violates this [equitable] guarantee of fairness." (*Spitler* v. *Dean* (1989) 148 Wis.2d 630 [436 N.W.2d 308, 310].) While acknowledging that the filing of a Doe complaint might have extended the time available to learn the identity of the defendant, it did not, in the Wisconsin court's view, "weaken the public policy favoring the adoption of the discovery rule in this case." (*Id.* at p. 311; see also *Royal Indem. Co.* v. *Petrozzino* (3d Cir. 1979) 598 F.2d 816, 819 [availability of fictitious name complaint does not preclude tolling of statute of limitations until bank's insurer discovers identity of robber].)

As these and other cases demonstrate, the equitable principle that a defendant who intentionally conceals his or her identity may be equitably estopped from asserting the statute of limitations to defeat an untimely claim, has been widely embraced. (See also *Lafferty* v. *Alan Wexler Agency, Inc.* (1990) 393 Pa. Super. 400 [574 A.2d 671, 674] ["[W]here a defendant or his agents actively mislead a plaintiff as to who are the proper defendant or defendants until after the statute of limitations period has expired, the proper remedy is to toll the statute of limitations as to the defendant regarding whom the concealment was directed."]; *Sattler* v. *Bailey* (1990) 184 W.Va. 212 [400 S.E.2d 220, 229] [the statute of limitations is tolled when "despite the due diligence of the injured person to discover the identity of all the wrongdoers, the identity of one or more of them is hidden by words or acts constituting affirmative concealment"]; *Noel* v. *Teffeau* (1934) 116 N.J.Eq. 446 [174 A. 145, 147] [assertion of statute of limitations against

---

[5]In 1982, our Legislature amended section 338 of the Code of Civil Procedure to provide that an action for recovery of stolen artwork does not accrue "until the discovery of the whereabouts" of the article. (Code Civ. Proc., § 338, subd. (c); Stats. 1982, ch. 340, § 1, pp. 1642-1643.)

victim of a hit-and-run who was ignorant of the identity of the driver "would be unconscionable"].)

■ As many of the foregoing decisions observe, and as this court has often stated, the primary interest served by statutes of limitations is that of repose. (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1112; *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 615 [189 Cal.Rptr. 871, 659 P.2d 1160].) Such statutes ensure that plaintiffs proceed diligently with their claims and mitigate the difficulties faced by defendants in defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps. (*Gutierrez* v. *Mofid, supra,* 39 Cal.3d at p. 898.) Nevertheless, where the bar becomes a sword rather than a shield, wielded by a party that has intentionally cloaked its identity, factors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience. As we long ago observed, "The statute of limitations was intended as a shield for [defendant's] protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors." (*Pashley* v. *Pacific Elec. Ry. Co., supra,* 25 Cal.2d at p. 231.)

■ Defendants observe that one Court of Appeal decision stands on all fours in their favor. In *Staples* v. *Zoph* (1935) 9 Cal.App.2d 369 [49 P.2d 1131], as here, the issue was whether defendant's concealment of her identity tolled the running of the statute of limitations in a libel action. The Court of Appeal, in a rather brief and conclusory opinion, held that "ignorance of the identity of the defendant did not toll the statute of limitations." (*Id.* at p. 370.) In so holding, the Court of Appeal relied principally on *Kimball* v. *Pacific Gas & Elec. Co.* (1934) 220 Cal. 203 [30 P.2d 39], a particularly aggravated example of fraudulent concealment of a cause of action. Contrary to the assertion by the Court of Appeal in *Staples,* however, *Kimball* draws no distinction between concealment of the identity of the wrongdoer and concealment of the injury. The *Staples* court also relied on *Gale* v. *McDaniel, supra,* 72 Cal. 334, a one-paragraph decision of this court holding that the plaintiff's action against the defendant for destroying his stable and barn was time-barred, and further observing that "[t]he fact that plaintiff only recently discovered who did the wrong makes no difference." (*Id.* at p. 335.) There was no indication in that case, however, that the defendant had intentionally concealed his identity to the detriment of the plaintiff.

Moreover, we note that the holding in *Staples,* although occasionally cited, has never been subsequently applied to bar an action grounded on similar facts, and its reasoning has been severely criticized. As Witkin observes:

"There seems little justification in principle for limiting the estoppel rule to concealment of the cause of action. Giving the fraudulent defendant the benefit of our short limitations [period] as a reward for his fraud is hardly consistent with the purpose of the statute—protection of the defendant from stale claims of a dilatory plaintiff. From this point of view the situations are substantially similar: In each the plaintiff, by reason of the defendant's conduct, is late in filing his action, and in each the statute is invoked by the defendant not for the legitimate purpose of preventing the surprise assertion of a stale claim but to defeat a trial on the merits of a claim well known. It is beside the point to contend, as in the *Staples* case, that the plaintiff could file an action against a fictitious defendant. An injured person does not go to the expense of legal representation and litigation merely because he knows he has been wronged. If he knows something of the *identity* of the wrongdoer he will sue though ignorant of his *true name*, and this is of course the use for which the pleading rule was designed. [Citation.] But if he has no knowledge of the wrongdoer's identity . . . it is scarcely expectable that he will file an action and hope that something turns up to make it worthwhile. . . . In short, if the necessary showing of fraud is made, it would seem that the wrongdoer's concealment of his identity should toll the statute." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 529, p. 558, original italics.)

We agree in the main with Witkin. One should not profit from one's own wrongdoing. Accordingly, we hold that a defendant may be equitably estopped from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity. Although several of the out-of-state decisions cited earlier conclude that a tort claim "accrues" only when the identity of the defendant is discovered (e.g., *Spitler* v. *Dean, supra,* 436 N.W.2d at p. 311; *O'Keeffe* v. *Snyder, supra,* 416 A.2d at p. 870), we need not go so far here. It is sufficient to hold simply that, under the circumstances described, the statute may be equitably tolled.[6]

The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence. (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d at p. 99.) Thus, under our holding the statute will toll *only* until such time that the plaintiff knows, or through the exercise of reasonable diligence should have discovered, the defendant's identity. Lack of knowledge alone is not sufficient to stay the statute; a plaintiff may not disregard reasonably available avenues of inquiry which, if vigorously pursued, might yield the desired information.

One factor which must be considered pertinent to the diligence inquiry is whether the filing of a timely Doe complaint would, as a practical matter,

---

[6]*Staples* v. *Zoph, supra,* 9 Cal.App.2d 369, is disapproved to the extent it is inconsistent with this holding.

have facilitated the discovery of the defendant's identity within the requisite three-year period for service of process. (Code Civ. Proc., § 583.210, subd. (a); *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1118.) Where the identity of at least one defendant is known, for example, the plaintiff must avail himself of the opportunity to file a timely complaint naming Doe defendants and take discovery. However, where the facts are such that even discovery cannot pierce a defendant's intentional efforts to conceal his identity, the plaintiff should not be penalized.

Recognition of a potential equitable estoppel under the foregoing circumstances will not unduly burden the trial courts. Indeed, our holding will have virtually *no* affect on the vast majority of civil cases. It is only in those relative few where the defendant asserts a statute of limitations defense and the plaintiff claims that he was totally ignorant of the defendant's identity as a result of the defendant's fraudulent concealment, that the issue will even arise; among those few, it will be the rare and exceptional case in which the plaintiff could genuinely claim that he was aware of no defendants, and even more rare that, given knowledge of at least one, he could not readily discover the remainder through the filing of a Doe complaint and the normal discovery processes.

The trial court here issued no statement of decision or findings of fact. In entering judgment for defendants, however, it is reasonable to infer that the trial court, like the Court of Appeal, relied on defendants' argument that *Staples* v. *Zoph, supra,* 9 Cal.App.2d 369, controlled, and found that ignorance of defendants' identity could not support an equitable estoppel as a matter of law. Since we have disapproved *Staples* v. *Zoph, supra,* 9 Cal.App.2d 369, the question is whether the matter should be remanded for further proceedings in light of our holding.

We conclude that a remand is appropriate. Our holding that a defendant's intentional concealment of his identity may justify an estoppel represents a new rule of law, as do our standards emphasizing the burden on the plaintiff to demonstrate reasonable diligence, including the filing of a complaint against known defendants. On remand the parties will have the opportunity in light of our decision to focus on and develop these pertinent legal and factual issues: whether, under the circumstances, defendants' anonymous commission, drafting and circulation of the allegedly defamatory dossier constituted intentional concealment; whether defendants' actions thereby deprived plaintiff, in fact, of knowledge of defendants' identity; and whether

plaintiff exercised reasonable diligence in attempting to discover defendants' identity.[7]

## CONCLUSION

Stolen property may be replaced or recovered, but where does one go to restore one's reputation? In the immortal words of Shakespeare's Iago: "Who steals my purse steals trash; . . . [¶] 'Twas mine, 'tis his, and has been slave to thousands; [¶] But he that filches from me my good name [¶] Robs me of that which not enriches him [¶] and makes me poor indeed." (Shakespeare, Othello, act III, scene 3.) However difficult, time-consuming and costly, a libel action may be the only recourse available to one who has been falsely maligned. When the victim's action is filed more than one year from the date of publication solely as a result of the wrongdoer's intentional concealment, equity and good conscience dictate that an estoppel defense be made available.

Accordingly, the judgment of the Court of Appeal is reversed, and the matter remanded for further proceedings consistent with the views expressed herein.

Mosk, J., Baxter, J., George, J., and Kline, J.,* concurred.

**KENNARD, J.,** Dissenting.—When a person who is the subject of a defamatory report has obtained a copy of the report, but does not know who prepared it, how long can he or she wait to file suit? California law requires the person to file a complaint within one year after he or she knows facts sufficient to state a cause of action for libel. The fact that the defamed person does not know who prepared the report does not change this rule, because California's fictitious name or "Doe" pleading procedure protects plaintiffs who do not know who has wronged them, by permitting them to designate by a fictitious name any defendant whose identity is not known when the complaint is filed. Here, plaintiff ignored this established procedure, and waited to file this lawsuit until more than three years after he knew the facts necessary to state a cause of action for libel, and over two years after the statute of limitations had expired on his claim.

The majority concludes that if the persons responsible for the defamatory report concealed their identities from plaintiff the statute of limitations

---

[7]The relevant period of inquiry concerning defendants' alleged concealment and plaintiff's diligence in discovering defendants' identity is, of course, the one-year limitations period following plaintiff's discovery of the alleged defamatory writing.

*Presiding Judge, Court of Appeal, First Appellate District, Division Two, assigned by the Acting Chairperson of the Judicial Council.

should not bar this action. The majority's theory is that the concealment of identity would prevent plaintiff from filing suit. I disagree with the broad rule the majority adopts today. Because the "Doe" pleading procedure allows a plaintiff to bring suit against unidentified persons, a tortfeasor who conceals his or her identity throughout the period of the statute of limitations does not necessarily prevent a plaintiff from filing suit.

Moreover, the rule the majority adopts should not save this lawsuit. The only act of concealment of identity alleged in this case occurred after the statute of limitations on plaintiff's libel action had already run. Accordingly, I dissent.

I

Plaintiff Hal Bernson, a member of the Los Angeles City Council, filed this lawsuit on January 17, 1992, naming as defendants Browning-Ferris Industries of California, Inc. (hereafter BFI), and three individuals, Les Bittenson, Lynn Wessell and Mark Ryavec. In the complaint seeking damages on several theories, Bernson alleged that defendants had libeled him in a report "formulated, printed, published and publicly disseminated" some time preceding Bernson's reelection to the city council in June 1991. The report, attached as an exhibit to Bernson's complaint, is titled "Los Angeles Councilman Hal Bernson—An Analysis of City/Campaign Financial Travel 1983-1988," and sets forth details of public campaign funds that Bernson purportedly spent on personal travel.

By general and special demurrer, defendant Ryavec asserted that the complaint failed to state any cause of action and objected, on grounds of "uncertainty," that it failed to allege "actionable conduct or damage first sustained" within the one-year statutory limitations period. (Code Civ. Proc., § 430.10, subds. (e) & (f); further undesignated statutory references are to this code.)[1] In response to the special demurrer for uncertainty, Bernson filed two declarations, his own and that of his chief deputy, Greig Smith. Bernson's declaration revealed that he had known of the allegedly libelous report since "the second half of 1988," when his staff obtained a copy of the report from a newspaper reporter. Bernson's declaration also mentioned that the report had been distributed anonymously to members of the Los Angeles media and "contained numerous untrue allegations concerning [Bernson's] city and campaign travel and spending."

Bernson's declaration further stated: on February 6, 1990, two Los Angeles Times reporters told Bernson it was defendant BFI that had prepared

---

[1] Both sides agree that each cause of action in Bernson's complaint was subject to a one-year limitations period.

the report. Immediately thereafter, Bernson confronted BFI's attorney with the reporters' statements. On February 12, 1990, BFI's attorney sent a letter to the Los Angeles Times, with a copy to Bernson, denying BFI's involvement in the preparation or distribution of the report and demanding that the reporters retract their accusations. Bernson accepted the representations of BFI's attorney, and "remained unaware of the Report's source" until May 31, 1991, when his chief deputy, Greig Smith, advised him that a third Los Angeles Times reporter had credited defendant Mark Ryavec with preparing the report for BFI. Smith's declaration confirmed the facts contained in Bernson's declaration.

The parties and the trial court treated the factual allegations set out in these two declarations as amendments to Bernson's complaint. Based on these additional facts revealing Bernson's knowledge of the report and its contents in late 1988, the trial court ruled that the complaint, raising claims subject to one-year statutory limitation periods, was untimely when filed on January 17, 1992. On that basis the court sustained defendant Ryavec's general demurrer without leave to amend, and dismissed Bernson's action against Ryavec with prejudice. Shortly thereafter, upon a motion of the remaining defendants (BFI, Bittenson, and Wessell), raising the one-year statute of limitations as a bar to Bernson's action, the trial court entered summary judgment.

Bernson sought review in the Court of Appeal, which affirmed the trial court's judgments. The Court of Appeal correctly resolved this case, as I shall explain.

## II

A. *A Plaintiff Must File a Libel Action Within One Year After Notice of Facts Sufficient to State a Cause of Action*

The statute of limitations for filing a libel action is one year. (§ 340, subd. (3).) This statute of limitations, like any other, serves two functions: it assures that plaintiffs will diligently pursue their claims, and it protects defendants from having to defend stale claims after memories have faded, evidence has been lost, and witnesses have dispersed. (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 898 [218 Cal.Rptr. 313, 705 P.2d 886]; see also *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923]; *Davies* v. *Krasna* (1975) 14 Cal.3d 502. 512 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) As we said in *Gutierrez*, "Limitations statutes afford repose by giving security and stability to human affairs." (39 Cal.3d at p. 899.)

In tort actions, the statute of limitations ordinarily begins to run "upon the occurrence of the last element essential to the cause of action." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421].) This general rule is modified, however, in cases subject to the rule of delayed discovery, which postpones the accrual date of a cause of action until the plaintiff discovers the "injury and its negligent cause." (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d 1103, 1109.) A limitations period subject to this rule of delayed discovery accrues no later than the time the plaintiff learns the facts essential to a particular cause of action. (*Gutierrez* v. *Mofid*, *supra*, 39 Cal.3d 892, 897; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand*, *supra*, 6 Cal.3d at p. 190.) When, as here, the plaintiff seeks personal injury damages for libel, the rule of delayed discovery applies and the statutory period for filing the lawsuit starts to run as soon as the plaintiff knows, or should know, the facts essential to alleging a cause of action for libel. (*Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 727-728, 731 [152 Cal.Rptr. 27].)

The facts a plaintiff knows or should know that will commence the running of the statute of limitations in any case that is subject to delayed discovery are not the specific facts the plaintiff must prove to prevail at trial. If the plaintiff is aware of facts that would put a reasonable person *"on inquiry,"* such knowledge is sufficient to start the running of the statute of limitations. (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1111, original italics.) Once the plaintiff suspects wrongdoing, and has an incentive to sue, the plaintiff "must go find the facts," and cannot wait for the facts to find the plaintiff. (*Ibid.*)

The plaintiff's ignorance of the identity of the defendant does not delay the running of the statute of limitations. (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1110; accord, *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321 [114 Cal.Rptr. 171, 91 A.L.R.3d 981]; *Calabrese* v. *County of Monterey* (1967) 251 Cal.App.2d 131, 141 [59 Cal.Rptr. 224]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 352, p. 381.) Therefore, a plaintiff who has knowledge of facts sufficient to state a cause of action must file suit within the statutory limitations period regardless of the plaintiff's knowledge of the identity of the defendant. Failure to do so is a bar to recovery.

B. *Ignorance of the Defendant's Identity Does Not Preclude a Plaintiff From Filing Suit*

To ameliorate the harsh results of applying the statute of limitations to a plaintiff who does not know the identity of the wrongdoer, our law permits

what is commonly referred to as "Doe" pleading. (§ 474; *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1118.) Under this procedure, a plaintiff "ignorant of the name of a defendant . . . must state that fact in the complaint, and may designate "such defendant . . . in any pleading or proceeding by any name," and, "when [the defendant's] true name is discovered, the pleading or proceeding must be amended accordingly." (§ 474.) Every plaintiff has three years after filing a complaint to serve the defendants designated in the pleading. (§ 583.210.) This rule has the practical effect of providing the plaintiff three additional years in which to identify the defendants. (*Jolly* v. *Eli Lilly & Co.*, *supra*, at p. 1118.)

By its terms, section 474 applies when a plaintiff is ignorant "of the *name* of the defendant." (Italics added.) Typically, a plaintiff who resorts to "Doe" pleading knows the names of one or several defendants but suspects that other persons or entities may also have been involved in the conduct that caused the plaintiff's injuries. (Hogan, *California's Unique Doe Defendant Practice: A Fiction Stranger Than Truth* (1977) 30 Stan.L.Rev. 51, 61.) Under section 474, the plaintiff can, in addition to naming the known defendants, include several "Doe" defendants in the complaint as a procedural precaution against "the possibility that, after the statute of limitations has expired, fresh factual information or new legal developments will reveal that others are liable in addition to, or instead of, those originally sued." (30 Stan.L.Rev. at p. 51.) This typical situation, however, is not the only use a plaintiff can make of the fictitious name pleading procedure. A plaintiff who has been injured but who does not know the identity of *anyone* responsible for that injury can, through the use of "Doe" pleading, file a lawsuit within the statutory limitations period naming only defendants designated by fictitious names. (*Id.* at p. 60, and fn. 30, citing *Wallis* v. *Southern Pac. Transportation Co.* (1976) 61 Cal.App.3d 782, 784-785 [132 Cal.Rptr. 631] [complaint named 20 Does and no other defendants].) This procedure permits plaintiffs to preserve claims against unknown defendants.

As this court stated more than a century ago: "Persons are sometimes compelled to bring suits in haste. They have not time to ascertain the true names of parties to be made defendants. The statute of limitations may, in a day from the time 'the preparation of the complaint is commenced, effect a bar. Sometimes there is no means readily accessible of ascertaining the true names. The [fictitious names] statute . . . was enacted to afford a remedy in such cases. (*Irving* v. *Carpentier* (1886) 70 Cal. 23, 26 [11 P. 391].)

This remedy was available here. Even though Bernson did not know who had prepared and distributed the allegedly libelous report, he could have used the "Doe" or fictitious name pleading procedure set forth in section

474. Bernson's cause of action for libel accrued sometime in late 1988 when he obtained a copy of the travel expenditure report at issue. At that point, he possessed sufficient facts to plead a cause of action for libel: the report targeted him; its contents were false; it exposed him to "hatred, contempt, ridicule, or obloquy," and its preparation and widespread distribution to members of the Los Angeles media denoted malice. (Civ. Code, § 45; *McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835 [231 Cal.Rptr. 518, 727 P.2d 711]; *Manguso* v. *Oceanside Unified School Dist., supra*, 88 Cal.App.3d 725.) Under the delayed discovery rule, Bernson had one year from the time in late 1988 when he obtained the report to file his complaint. (§ 340, subd. (3); *Manguso* v. *Oceanside Unified School Dist., supra*, at pp. 727, 731.) Bernson did not file his complaint until January 17, 1992—more than three years after his discovery of the report and more than two years after expiration of the one-year limitations period. His complaint was therefore untimely.

Bernson's claimed ignorance of the identity of the persons responsible for the report and its distribution makes no difference. The identity of the persons responsible for preparing and distributing the report is not an element of a cause of action for libel. (Civ. Code, § 45 [defining libel].) Therefore, ignorance of the identity of the wrongdoer will not delay accrual of the cause of action under the delayed discovery rule. At any time during the limitations period after accrual of his cause of action for libel, Bernson could have filed his complaint naming "Doe" defendants. Yet he ignored the "Doe" pleading procedure and, after learning of the report, waited more than three years to bring suit.

Even though the "Doe" pleading procedure provides an adequate remedy for plaintiffs like Bernson who remain ignorant of the identity of any defendant throughout the period of the statute of limitations, the majority today devises an equitable estoppel remedy to salvage this lawsuit. Although it acknowledges that as a general rule a plaintiff who is ignorant of a defendant's identity must comply with the statutory limitations period by filing a "Doe" pleading, the majority carves out an equitable exception to that rule for those situations in which "the plaintiff is not only unaware of the defendant's identity, but is effectively precluded as a practical matter from ascertaining it through normal discovery procedures" as the "result of the defendant's intentional concealment." (Maj. opn., *ante*, p. 933.) The majority's exception does not withstand scrutiny in general or on the facts of this case, as discussed below.

## III

### A. *The Majority's Equitable Estoppel Rule*

In the majority's view, a defendant can be equitably estopped from asserting the statute of limitations as a bar against a plaintiff who, because of the defendant's intentional concealment, was unable to learn the defendant's identity. The rule would not apply in every case of active concealment of identity, however, but would be limited to those cases in which the plaintiff is "effectively precluded" from ascertaining it through civil discovery. (Maj. opn., *ante*, p. 933.) Moreover, this rule would toll the statute of limitations only until the "plaintiff knows, or through the exercise of reasonable diligence should have discovered, the defendant's identity." (Maj. opn., *ante*, p. 936.)

Underlying the majority's holding is the premise that it would be unfair to dismiss the case of a plaintiff who, notwithstanding diligent efforts to ascertain the identity of the defendant, was unable to file a timely complaint because of the defendants intentional and wrongful concealment of identity. Implicit in this premise is that a plaintiff's knowledge of the defendant's identity is necessary for the plaintiff to file a lawsuit. But, as I explained earlier, our law does not penalize a plaintiff who, for whatever reason, is unable to determine within the statutory period of limitations the identity of the wrongdoer responsible for the harm caused the plaintiff. Because plaintiffs ignorant of the identity of any defendant who caused them harm can file a complaint designating the defendant by a fictitious name, as specifically permitted under section 474, they should not be excused from timely filing a complaint.

The majority also assumes that in some cases the plaintiff's ignorance of a defendant's identity (or more specifically, ignorance of identity that is a by-product of the defendant's act of concealment) may "effectively" preclude the plaintiff from overcoming that ignorance through "normal discovery procedures." This situation would arise, presumably, only in cases in which the plaintiff does not know the identity of *any* defendant. (See maj. opn., *ante*, p. 933.) The majority reasons that the plaintiff's lack of knowledge of the identity of any defendant could so impair the use of the discovery procedures that it would be impossible for the plaintiff to find out who should be held accountable for the harm caused the plaintiff. But are the discovery procedures "effectively" unavailable to a plaintiff who is ignorant of the identity of any defendant? The majority accepts without question that this is so. I do not.

## B. *A Plaintiff Who Uses the Doe Pleading Procedure Is Not "Effectively Precluded" From Conducting Discovery to Ascertain a Defendant's Identity*

The majority refers to the Civil Discovery Act of 1986 in a footnote that questions whether "the filing of a complaint naming *only* Doe defendants" will "trigger the normal discovery procedures." (Maj. opn., *ante*, p. 930, fn. 2.) The footnote discusses only two discovery provisions. One of these is section 2035, which pertains to discovery *before* a lawsuit is filed and thus is irrelevant to whether a plaintiff who has filed a lawsuit using the Doe pleading procedure is effectively cut off from conducting discovery. The other provision the majority cites is section 2025, subdivision (b)(2), which permits a plaintiff "without leave of court" to serve a deposition notice for a date 20 days after "the service of the summons on, or appearance by, any defendant." The majority apparently assumes that if no defendant is known to the plaintiff, and thus no defendant receives a summons or makes an appearance, the 20-day period after which the plaintiff can hold a deposition will never commence. That assumption, however, belies the statute's "good cause" exception, under which the trial court can grant a plaintiff leave to conduct a deposition "on an earlier date" upon a showing of good cause. I can think of no better "cause" to justify discovery in a lawsuit than the plaintiff's need to identity the defendant. Thus, I am not convinced that, as the majority asserts, the provisions of the Civil Discovery Act of 1986 are unavailable to a plaintiff who has filed a "Doe" complaint naming only Doe defendants, or that a plaintiff ignorant of the name of any defendant is "effectively precluded" from overcoming that ignorance through discovery.

## C. *A Defendant's Active Concealment of Identity Should Not Estop the Assertion of the Statute of Limitations as a Bar Unless It Actually Prevents the Plaintiff From Bringing Suit*

The majority also justifies its estoppel rule as necessary to prevent defendants who conceal their identity from turning their active concealment into a litigation advantage. I agree that if a defendant's active concealment of identity worked a fraud upon a plaintiff, for instance by lulling the plaintiff into believing there had been no actionable wrong, it would not be equitable to let the defendant gain some benefit from that misconduct.

A case on point is *Kimball* v. *Pacific Gas & Elec. Co.* (1934) 220 Cal. 203 [30 P.2d 39], a personal injury action involving a Pacific Gas and Electric Company (PG&E) employee, Kimball, who, while working in a PG&E powerhouse, was knocked unconscious and suffered severe head injuries when hit by a 20-pound bolt falling from an overhead platform. What Kimball did not know and what was concealed from him was that the person

who had negligently placed the bolt on the elevated platform was not a fellow PG&E employee, but an employee of the General Electric Company, which PG&E had engaged to repair its powerhouse generators. Accordingly, Kimball pursued his workers' compensation remedy against PG&E for his injuries but did not file a lawsuit within the one-year statutory limitations period. After Kimball settled his workers' compensation case, PG&E secretly agreed to accept reimbursement from General Electric Company for one-half of the compensation PG&E had paid for Kimball's injuries.

This court held that the one-year statute of limitations did not bar Kimball's lawsuit seeking damages from General Electric Company even though Kimball filed his complaint more than one year after his injury. We adopted a rule of "delayed discovery" that operated to postpone accrual of the statute of limitations when a defendant's fraudulent concealment of identity also concealed from the plaintiff "the facts upon which a legal common-law action is based." (*Kimball* v. *Pacific Gas & Elec. Co., supra*, 220 Cal. at pp. 206-207, 210.) Under this rule, the statute of limitations would not accrue until the plaintiff discovered the facts supporting a common law suit, at which time the statutory limitations period would commence to run. (*Id.* at p. 210.) The situation here is not similar, however. No active concealment of identity by defendants misled Bernson into believing that he had no cause of action, thus alleviating any need to expand the availability of an estoppel theory beyond the scope set forth in *Kimball*.

### D. *Bernson Has Not Met His Burden of Pleading Active Concealment to Excuse His Failure to Comply With the Statute of Limitations*

In adopting the equitable estoppel rule in *Kimball* v. *Pacific Gas & Elec. Co., supra*, we were careful to note that to assert this tolling provision a plaintiff's complaint must include certain factual allegations " 'before it will be held sufficient.' " (220 Cal. at p. 215.) To excuse the late filing of a complaint on the basis of a defendant's fraudulent concealment, the complaint must allege when the fraud was discovered, the circumstances of its discovery, why plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff " 'ha[d] no actual or presumptive knowledge of the facts sufficient to put him on inquiry.' " (*Ibid.*; see also 3 Witkin, Cal. Procedure, *supra*, Actions, § 532, p. 560 [setting forth the pleading obligations of a plaintiff seeking estoppel].)

Here, Bernson's allegations do not satisfy these pleading requirements. Bernson does not allege a single act of concealment by defendants during the one-year period after he obtained the allegedly libelous report. Indeed, the only suggestion in Bernson's complaint of any concealment of identity

attributable to defendants is the letter sent by BFI's attorney denying his client had any role in preparing or distributing the report. But this letter was sent in February 1990, at least two months after expiration of the statute of limitations. The factual allegations pertaining to this letter fall far short of what is required to plead equitable estoppel of the statute of limitations bar. Bernson's allegations do not explain his failure to file suit within one year after he learned of the report. Nor do they negate "his actual or presumptive knowledge of facts to put him on inquiry" (*Kimball* v. *Pacific Gas & Elec. Co.*, *supra*, 220 Cal. at p. 215) that he had been libeled. Notably, the complaint does not address why Bernson did not pursue his case in a timely fashion using the "Doe" pleading procedure. I can only conclude from the absence of factual allegations explaining Bernson's late filing of his complaint that he sat on his rights.

## Conclusion

To rescue Bernson's libel action, which he did not file until January 1992, even though by late 1988 he knew every fact necessary to bring a lawsuit, the majority crafts a rule to estop defendants from asserting the statute of limitations as a bar. As I have explained, this rule is unnecessary to achieve equity, is premised on faulty assumptions about California procedure, and should not apply on the facts of this case.

For these reasons, I cannot join the majority, and I would affirm the judgment of the Court of Appeal.

Lucas, C. J., concurred.