Filed 4/27/22  Ocaranza v. C.H.L. EMS CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PHILLIP OCARANZA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> C.H.L. EMS, INC., <br><br> Defendant and Respondent. | F081481 <br><br> (Super. Ct. No. VCU274543) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan D. Ide, Judge.

Nelson & Rozier, and Ryan T. Nelson, for Plaintiff and Appellant.

Small, Henstridge, Cabodi & Pyles, and Bryan D. Pyles, for Defendant and Respondent.

-ooOoo-

Plaintiff Phillip Ocaranza brought this medical malpractice and wrongful death action against defendants DVA Renal Healthcare, Inc. dba Tulare Dialysis (Tulare Dialysis) and C.H.L. EMS, Inc. dba American Ambulance of Visalia (C.H.L./American Ambulance or American Ambulance of Visalia or American Ambulance), after the death of his mother, Dana Ocaranza, in Visalia. Dana Ocaranza died on August 5, 2017, shortly after two unrelated falls that occurred days apart at the Tulare Dialysis facility in Tulare (August 1, 2017) and Kaweah Delta Hospital in Visalia (August 4, 2017), respectively.

The first fall occurred on August 1, 2017, at the Tulare Dialysis facility in Tulare; Dana Ocaranza fell from a Hoyer lift and was admitted to Kaweah Delta Hospital in Visalia for treatment of injuries sustained in the fall. She suffered the second fall at Kaweah Delta Hospital on August 4, 2017. The second fall occurred when C.H.L/American Ambulance personnel came to transport her from Kaweah Delta hospital to a nursing and hospice facility. As two ambulance personnel attempted to move Dana Ocaranza from her hospital bed to an ambulance gurney, she fell between the bed and gurney, to the floor. The impending transfer to the nursing and hospice facility was canceled and Dana Ocaranza received further treatment at the hospital in light of the fall. She died in the early morning hours of August 5, 2017.

The trial court granted summary judgment to C.H.L./American Ambulance on statute of limitations grounds. Ocaranza appealed. We affirm.

## PROCEDURAL HISTORY

Phillip Ocaranza filed an initial complaint on July 3, 2018, against "Davita Medical Group," five individuals, and "Does 1 to 10." (Unnecessary capitalization omitted.) The complaint alleged the Doe defendants "were the agents or employees of other named defendants and acted within the scope of that agency or employment," and that the names of these agents or employees were not known to plaintiff. The complaint

2.

alleged a single "medical negligence" cause of action against all defendants, based on an August 1, 2017 incident at "Davita Medical Group in Tulare."[1] (Unnecessary capitalization omitted.) As for the facts underlying the claim, the complaint alleged: "Ms. [Dana] Ocaranza was being transferred via a lift mechanism when the mechanism which was negligently owned, maintained, managed, used, repaired and operated, caused Ms. Ocaranza to fall, and sustain injury, and die."

Phillip Ocaranza filed a first amended complaint on August 16, 2018, against "DVA Renal Healthcare, Inc., dba Tulare Dialysis and Does 1 to 10." (Unnecessary capitalization omitted.) The first amended complaint alleged the Doe defendants "were the agents or employees of other named defendants and acted within the scope of that agency or employment," and that the names of these agents or employees were not known to plaintiff. The first amended complaint alleged a single "medical negligence" cause of action as to "DVA Renal Healthcare, Inc. dba Tulare Dialysis and Does 1 to 10" based on an August 1, 2017 incident at "Davita Medical Group in Tulare."[2] (Unnecessary capitalization omitted.) The first amended complaint alleged: "Ms. [Dana] Ocaranza was being transferred via a lift mechanism when the mechanism which was negligently owned, maintained, managed, used, repaired and operated, caused Ms. Ocaranza to fall, and sustain injury, and die."

Phillip Ocaranza filed a second amended complaint on May 8, 2019, against "DVA Renal Healthcare, Inc. dba Tulare Dialysis; *American Ambulance of Visalia*; and Does 1 to 10." (Unnecessary capitalization omitted, italics added.) The second amended

---

[1] The title page of the complaint specified, by means of checked boxes, that it was a complaint for medical negligence and wrongful death, and the complaint sought damages for both medical damages and wrongful death.

[2] The title page of the first amended complaint specified, by means of a checked box, that it pertained to medical negligence only, but it sought damages for both medical negligence and wrongful death.

complaint alleged the Doe defendants "were the agents or employees of other named defendants and acted within the scope of that agency or employment," and that the names of these agents or employees were not known to plaintiff. The second amended complaint alleged a first cause of action, "medical negligence," against "DVA Renal Healthcare, Inc., dba Tulare Dialysis" and Does 1 to 10, based on an August 1, 2017 incident at "Davita Medical Group in Tulare." (Unnecessary capitalization omitted.) As to this cause of action, the second amended complaint alleged "Ms. [Dana] Ocaranza was being transferred via a lift mechanism when the mechanism which was negligently owned, maintained, managed, used, repaired and operated, caused Ms. Ocaranza to fall, and sustain injury, and die." The second amended complaint further alleged, for the first time, a second cause of action, "medical negligence," against "*American Ambulance of Visalia* and Does 1 to 10," based on an *August 4, 2017* incident at "*Kaweah Delta Medical Center.*"[3] (Unnecessary capitalization omitted, italics added.) As to this cause of action, the second amended complaint alleged: "Ms. Ocaranza was being transferred by American Ambulance of Visalia employees, names unknown, when they dropped her thereby causing her injury and death."[4]

Phillip Ocaranza filed a third amended complaint on August 15, 2019, against "DVA Renal Healthcare, Inc. dba Tulare Dialysis; American Ambulance of Visalia; and Does 1 to 10." The third amended complaint alleged the Doe defendants "were the

---

[3] The title page of the second amended complaint specified, by means of a checked box, that it pertained to medical negligence only, but it sought damages for both medical negligence and wrongful death.

[4] Phillip Ocaranza filed a motion for leave to file second amended complaint and a memorandum of points and authorities in support thereof. The memorandum of points and authorities in support of the motion to file second amended complaint stated that C.H.L./American Ambulance employees had "dropped Ms. [Dana] Ocaranza on her head causing her to suffer a brain hemorrhage and die." The memorandum of points and authorities further stated: "The two year [statute] of limitations in wrongful death actions does not preclude the addition of [C.H.L./American Ambulance as a defendant]."

agents or employees of other named defendants and acted within the scope of that agency or employment," and that the names of these agents or employees were not known to plaintiff. The third amended complaint alleged three causes of action. The first cause of action, "medical negligence," was alleged against "DVA Renal Healthcare, Inc. dba Tulare Dialysis and Does 1 to 10," based on an August 1, 2017 incident at "Kaweah Delta Medical Center." (Unnecessary capitalization omitted.) The third amended complaint alleged, as to this cause of action: "Ms. [Dana] Ocaranza was being transferred via a lift mechanism when the mechanism which was negligently owned, maintained, managed used repaired and operated, caused Ms. Ocaranza to fall, and sustain injury, and die."

The third amended complaint alleged a second cause of action, "*wrongful death*," against "C.H.L. EMS, Inc., dba American Ambulance of Visalia and Does 1 to 10," based on an August 4, 2017 incident at "Kaweah Delta Medical Center." (Unnecessary capitalization omitted, italics added.) As to this cause of action, the third amended complaint alleged: "Defendants' employees, whose names are unknown, are medical professionals who provided service to Dana Ocaranza on August 4, 2017. During the course of transferring [her] from her hospital bed to a gurney, defendants [*sic*] employees dropped Dana Ocaranza to the floor. [¶] Defendants' employees owed a duty of care to Dana Ocaranza to use such skill, prudence and diligence as other members of their profession commonly possess and exercise. By dropping Dana Ocaranza while they were transferring her to a gurney, defendants' employees breached their duty of care to Dana Ocaranza. [¶] Defendants' breach of the duty was the direct and proximate cause of injury to Dana Ocaranza including death."

The third amended complaint alleged a third cause of action, "*survival action*," against "C.H.L. EMS, Inc., dba American Ambulance of Visalia and Does 1 to 10," based on an August 4, 2017 incident at "Kaweah Delta Medical Center." (Unnecessary

5.

capitalization omitted, italics added.)  The third amended complaint incorporated, as to this cause of action, the allegations set forth in the second cause of action.

C.H.L./American Ambulance moved, on February 5, 2020, for summary judgment against the third amended complaint, on statute of limitations grounds.  The trial court heard C.H.L./American Ambulance's motion for summary judgment on June 22, 2020.  The court summed up C.H.L./American Ambulance's position:  "American Ambulance bases [its motion for summary judgment] on the grounds that plaintiff's action is time-barred against American Ambulance because [Code of Civil Procedure section] 340.5 would require plaintiff to file his complaint against this defendant no later than one-year from the August 4, 2017 date that American Ambulance committed the conduct that may have resulted in the [death] of plaintiff's decedent and plaintiff failed to do so."  The court granted summary judgment to C.H.L./American Ambulance.

**FACTS**

As noted, Plaintiff Phillip Ocaranza's mother, decedent Dana Ocaranza, suffered two distinct and unrelated falls just prior to her death on August 5, 2017.  The first fall occurred on August 1, 2017, at Tulare Dialysis in Tulare, where Dana Ocaranza received dialysis treatment.  Dana Ocaranza was being transferred from a Hoyer lift when she fell.  Dana Ocaranza, who had end-stage renal disease and advanced breast cancer among other health conditions, suffered hip and right tibia fractures from the fall.  She was transported to the emergency room at Kaweah Delta Hospital in Visalia for treatment of the injuries sustained in the fall.  She was ultimately admitted to Kaweah Delta Hospital for treatment of her fractured leg.

A few days later, on the morning of August 4, 2017, Phillip Ocaranza met with a hospice care facilitator at Kaweah Delta Hospital and agreed to the transfer of his mother from the hospital to a nursing and hospice care facility (Tulare Nursing and

6.

Rehabilitation with Hospice).[5]  A case management note in Dana Ocaranza's hospital records specified that a nurse asked Phillip Ocaranza which ambulance service he would prefer to use for the transfer, but Phillip Ocaranza expressed "[n]o preference."  Phillip Ocaranza then departed the hospital.

Phillip Ocaranza was subsequently notified by the hospice care facilitator, in a phone call on the afternoon of August 4, 2017, that his mother had suffered a fall at the hospital during the transfer process earlier that afternoon.  Phillip Ocaranza immediately went to the hospital and found his mother was undergoing a CAT scan at the hospital.  As Phillip Ocaranza waited in his mother's hospital room for her to return, the hospice care facilitator came to talk to him.  The hospice care facilitator explained that his "[mother] was dropped during transfer to gurney."  Dana Ocaranza was being moved to the gurney in order to transport her to a different facility; no nurse was present for the move to the gurney.  In view of the fall, Dana Ocaranza was not transferred from Kaweah Delta Hospital; rather, she stayed at the hospital for additional treatment.  Phillip Ocaranza instructed the hospice facilitator:  " 'She is not leaving this place again.' "

Dana Ocaranza was brought back to her hospital room after her CAT scan or CT scan was completed.  A doctor told Phillip Ocaranza that the CAT scan or CT scan conducted after the fall detected "a small brain bleed."  Phillip Ocaranza then left for the night.

At 5:00 a.m. the next morning, the hospital called to inform Phillip Ocaranza that his mother had passed away.  Phillip Ocaranza testified at deposition that he got to the hospital at around 7:00 a.m. the same morning; he met with a representative of the Tulare County Sheriff-Coroner's Office who talked to him about the situation.  Phillip Ocaranza also testified that he spoke to the hospice care facilitator or a nurse that morning as well;

---

[5]     The record indicates that Dana Ocaranza was cared for at Tulare Nursing and Rehabilitation prior to the fall she suffered at Tulare Dialysis, which fall required her to be admitted to Kaweah Delta Hospital.

7.

he stated: "They said when they were transferring [Dana Ocaranza] from her bed to the gurney, the gurney and bed split. So she fell in between the gurney and the bed." Phillip Ocaranza noted he was further informed at that time that "ambulance company" personnel were moving his mother from the bed to the gurney when the fall occurred. Finally, Phillip Ocaranza was told by one of his mother's treating doctors, Dr. Huyhn, that the brain bleed his mother suffered in the fall the previous day, was one of the factors that caused her death.

Phillip Ocaranza received his mother's death certificate, which he used for purposes of winding up his mother's affairs. The death certificate listed "intracranial hemorrhage" as one of the underlying causes of his mother's death. The death certificate also indicated that Dana Ocaranza's death was reported to the coroner and noted a referral number for the coroner's office.

The Tulare County Sheriff's Department prepared an "incident report" regarding the "coroner case," on August 5, 2017. (Unnecessary capitalization omitted.) The report noted the deputy preparing the report had spoken to Phillip Ocaranza and provided him with a phone number to reach the deputy in case of any questions. The report noted that Dana Ocaranza arrived at Kaweah Delta Hospital on August 1, 2017, "after falling from a Hoyer lift" at "Davita [C]linic while undergoing dialysis." The report also described the subsequent incident at Kaweah Delta Hospital when Dana Ocaranza, upon being moved by ambulance personnel, fell to the floor between her hospital bed and the ambulance gurney. As to the latter incident, the report stated: "Medical staff advised[,] on 08/04/17 the decedent was going to be transferred to Tulare nursing rehab via American Ambulance. At approximately 1315 hours the decedent was dropped while transferring her from the hospital bed to the gurney by Ambulance Staff, Seth Robertson, and Shaela Edwards." The report indicated the deputy writing the report spoke with Jeff Ruch, American Ambulance's field supervisor, who was aware of the incident and the roles of

8.

American Ambulance personnel.  The report further noted:  "A CT scan was done prior to the release of the decedent on 08/03/17 at approximately 1102 hours which showed no bleeding on the brain.  A second CT scan was performed after the decedents [*sic*] second fall which showed brain bleed on 08/04/17 at approximately 1426 hours."  The report concluded, "This case will be filed under accidental per Coroners [*sic*] request."

Kaweah Delta Hospital for its part, prepared on September 19, 2017, an incident report/risk management report regarding Dana Ocaranza's August 4, 2017 fall, for the California Department of Public Health.  Kaweah Delta Hospital also prepared an event summary related to the incident, among other records.  These records reflected that Dana Ocaranza suffered a fall on August 4, 2017, that resulted in an acute intracranial bleed.  The records documented that American Ambulance was dispatched to, and arrived at, the hospital to transfer the patient to a nursing/hospice facility, and that when ambulance personnel were transferring the patient from the hospital bed to an ambulance gurney, the patient fell in between the bed and the gurney.  The records identified "EMT Seth Robertson and EMT Shaela Edwards" as the ambulance personnel who were moving the patient when she fell; the records also named Jeff Ruch, the field supervisor for American Ambulance.  Kaweah Delta Hospital produced these records to C.H.L./American Ambulance in response to a subpoena seeking incident and investigative reports.

On August 8, 2017, three days after Dana Ocaranza passed away, plaintiff's counsel sent a letter to American Ambulance of Visalia seeking "complete medical records for the past five (5) years" related to Dana Orcanaza.  The letter specified Dana Ocaranza's date of birth and an incorrect date of death (August 1, 2017), and referenced "an incident which occurred on August 1, 2017 [for] which she was treated at your facility."  American Ambulance's Medical and Billing Records Department responded on February 13, 2018, with a letter stating they had no medical and billing records for a patient with the above-described information.  Plaintiff's counsel thereafter made similar

9.

record requests to other ambulance companies in the area, to no avail. On February 28, 2019, counsel or counsel's discovery service requested Dana Ocaranza's records from American Ambulance in person and received records related to two service calls, but none for August 2017.

On March 26, 2019, counsel's discovery service subpoenaed from Tulare County Consolidated Ambulance Dispatch (TCCAD), ambulance dispatch records relating to Dana Ocaranza for the period between August 1, 2017, and August 4, 2017. Records turned over by TCCAD on April 22, 2019, established that American Ambulance was dispatched to Kaweah Delta Hospital on August 4, 2017, to transport Dana Ocaranza (transport was not ultimately provided as the transfer request was canceled after Dana Ocaranza fell). Thereafter, on May 3, 2019, Phillip Ocaranza filed the second amended complaint, which alleged, for the first time, a claim against American Ambulance related to the August 4, 2017 incident at Kaweah Delta Hospital.

Phillip Ocaranza submitted with his opposition papers to American Ambulance's summary judgment motion, a declaration from an expert in emergency medical services. The expert noted that whenever a dispatch of emergency medical services is initiated in response to a call, a patient care report is to be created and, in the event of a cancelation, the report simply reflects the applicable initiation and cancelation information. In other situations, the report would reflect the appropriate information regarding transport of the patient, including any incident information, so as to document a "continuum of care" for the patient. In this instance, where the transfer of the patient was canceled, no documentation was generated by the responding emergency medical technicians.[6]

---

[6] We need not address C.H.L./American Ambulance's objection to the expert declaration submitted by Phillip Ocaranza with his opposition papers, because, even considering this evidence, we have affirmed the court's summary judgment ruling in favor of C.H.L./American Ambulance.

## DISCUSSION

**I.    Trial Court's Grant of Summary Judgment to C.H.L./American Ambulance**

A personal injury action generally must be filed within two years of the date on which the challenged act or omission occurred. (Code Civ. Proc., § 335.1.) A special statute of limitations applies, however, to actions "for injury or death against a health care provider based upon such person's alleged professional negligence." (Code Civ. Proc., § 340.5.)[7] Unlike most other personal injury actions, professional negligence actions against health care providers must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (*Ibid*; see *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, 4-5 [the Medical Injury Compensation Reform Act (MICRA) limits the time to file suit against a health provider to one year from the date the injury is discoverable (Code Civ. Proc., § 340.5), instead of the two-year limitations period for general negligence (Code Civ. Proc., § 335.1)].)

Here, in granting summary judgment, the trial court applied MICRA's one-year statute of limitations to Phillip Ocaranza's claims of injury/wrongful death based on medical negligence, against C.H.L/American Ambulance, arising from the August 4, 2017 incident involving his mother. The trial court cited section 340.5 in its ruling, stating: "The one-year limitation applies even though three years have not passed since the 'time of the injury[,]' [where] plaintiff has discovered or should have discovered the injury, i.e., the action will be barred if not commenced within one year from the date of discovery or 'deemed discovery date' of the injury."

Phillip Ocaranza does not challenge the trial court's determination that MICRA's one-year statute of limitation applies here. Accordingly, we will accept this aspect of the trial court's ruling. (See, e.g., *Canister v. Emergency Ambulance Service, Inc*. (2008)

---

**7**    Undesignated statutory references are to the Code of Civil Procedure.

11.

160 Cal.App.4th 388, 392, 403 [EMTs and ambulance companies are healthcare providers entitled to the application of MICRA].)

Phillip Ocaranza argues on appeal that his claims against C.H.L./American Ambulance, alleged in the second amended complaint (filed on May 3, 2019) and third amended complaint (filed August 15, 2019), were timely because he did not discover the "injury" for purposes of triggering the one-year statute of limitations until February 2019, when his counsel learned from "counsel for Tulare Dialysis … that their medical expert would opine that [Dana] Ocaranza's death was not caused by the first fall on August 1, 2017, but was actually caused by the second fall on August 4, 2017 caused by unknown EMS personnel."

Phillip Ocaranza next argues that C.H.L./American Ambulance is barred by the doctrine of equitable estoppel from raising the statute of limitations as a defense.

Finally, Phillip Ocaranza argues the claims against C.H.L/American Ambulance alleged in the second amended complaint and third amended complaint, relate back to the original complaint.

We are not persuaded by Phillip Ocaranza's contentions and affirm the trial court's ruling granting summary judgment to C.H.L./American Ambulance.

### A. Trial Court Properly Granted Summary Judgment Because Phillip Ocaranza's Claims Against C.H.L/American Ambulance Were Untimely Under MICRA's One-Year Statute of Limitations

#### (1) Standard of Review

The standard of review of a summary judgment in favor of a defendant is well settled. We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law." (*Rubin v. United Air Lines, Inc*. (2002) 96 Cal.App.4th 364, 372 (*Rubin*).) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in

12.

question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the opposing party." (*Rubin*, *supra*, at p. 372.)

In considering a motion for summary judgment based on the statute of limitations, "[t]he unrebutted evidence presented by defendant must establish beyond dispute the plaintiff failed to bring his action within three years after the date of injury or one year after he discovered, or through the use of reasonable diligence should have discovered, the injury." (*Unjian v. Berman* (1989) 208 Cal.App.3d 881, 884.) "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 (*Jolly*); see also *Graham v. Hansen* (1982) 128 Cal.App.3d 965, 972 ["While the reasonableness of a delayed discovery is ordinarily a question of fact, the issue presents a question of law when the evidence establishes beyond dispute that the plaintiff has failed to bring the action within one year after notice of its existence."].)

### (2) Analysis

"Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 389 (*Norgart*).) "The statute of limitations operates in an action as an affirmative defense." (*Id*. at p. 396.) "[I]t is important to a defendant that he receive notice of the charge against him, in order to inform himself and to prepare his defense, and for this purpose, among others, the statutes of limitations have been enacted." (*Lipman v. Rice* (1963) 213 Cal.App.2d 474, 478.)

Here, there is no dispute that the applicable statute of limitations is section 340.5, which provides in pertinent part: "[T]he time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Courts have described the "discovery rule" as follows: "The one-year period commences when the plaintiff is aware of both the physical manifestation of the injury and *its negligent cause*." (*Rose v. Fife* (1989) 207 Cal.App.3d 760, 768 (*Rose*); see *Jolly*, *supra*, 44 Cal.3d at p. 1112 ["[T]he accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause. [Citation.] A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her."].) As another court has stated: "[Section 340.5] sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

"Our Supreme Court has often discussed the one-year rule's requirement of discovery of the negligent cause of injury. When a plaintiff has information which would put a reasonable person on inquiry, when a plaintiff's 'reasonably founded suspicions [have been] aroused' and the plaintiff has 'become alerted to the necessity for investigation and pursuit of her remedies,' the one-year period commences. 'Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute.' " (*Rose*, *supra*, 207 Cal.App.3d at p. 768.) "The plaintiff's ignorance of the identity of the defendant wrongdoer does not toll the one-year period." (*Id*. at pp. 768-769; *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932 ["While ignorance of the existence of an injury or cause of action may delay the running of the statute of

limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute."].)

" 'Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her…. A plaintiff need not be aware of the specific "facts" necessary to *establish* the claim [such as failure to test, failure to warn, failure to diagnose]; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; *she cannot wait for the facts to find her.*' " (*Rose*, *supra*, 207 Cal.App.3d at p. 769, quoting *Jolly*, *supra*, 44 Cal.3d at pp. 1110-1111.)

Here, on the morning of August 4, 2017, Dana Ocaranza was cleared for release from the hospital. Hospital staff, after discussing the issue with Phillip Ocaranza, called an ambulance to transport her to a nursing and hospice care facility. Phillip Ocaranza had expressed no preference as to which ambulance service to utilize for this purpose and left it to a nurse to make the decision. As ambulance personnel attempted to transfer Dana Ocaranza from her hospital bed to an adjacent ambulance gurney, the bed and gurney moved apart, and she fell to the floor. Hospital staff promptly became aware of the situation, canceled the transfer request, sent Dana Ocaranza for a CT scan of the head, and notified Phillip Ocaranza of what had occurred. Later that day, a doctor informed Phillip Ocaranza that the CT scan conducted after the fall in the hospital detected a brain bleed. Phillip Ocaranza forbad hospital staff from transferring his mother from the hospital again.

Dana Ocaranza passed away in the early morning hours of August 5, 2017. Phillip Ocaranza was again notified and came to the hospital shortly thereafter. The

circumstances of the fall were again explained in detail to him by hospital staff. Phillip Ocaranza also spoke to Dr. Hyunh, one of his mother's treating doctors, who informed him the brain bleed or intracranial hemorrhage detected after Dana Ocaranza's fall played a role in her death. In addition, Phillip Ocaranza talked to a deputy from the sheriff's office; the deputy prepared an investigative report incorporating the conclusions of the Tulare County Sheriff-Coroner. Incident/risk management reports and documents were also generated by Kaweah Delta Hospital. The sheriff's office report and incident reports prepared by Kaweah Delta Hospital detailed the circumstances of Dana Ocaranza's fall, identified the ambulance service and ambulance service personnel involved, and documented the brain bleed detected by the CT scan conducted thereafter. Dana Ocaranza's death certificate also noted that one of the underlying causes of her death was an intracranial hemorrhage that she had suffered.

The uncontradicted evidence shows Dana Ocaranza's injury from the incident at Kaweah Delta Hospital had manifested itself on August 5, 2017, when she was found to have suffered a brain hemorrhage and died shortly thereafter. Given the circumstances, Phillip Ocaranza would have " 'reasonably founded suspicions' " she was harmed by ambulance company personnel who alone attempted to move her from her hospital bed to an ambulance gurney and dropped her to the floor in the process. (*Rose*, *supra*, 207 Cal.App.3d at p. 768.) To the extent Phillip Ocaranza did not suspect that Dana Ocaranza's injury was caused by wrongdoing of ambulance company personnel, we hold as a matter of law that a reasonable person would have suspected wrongdoing by ambulance company personnel and been on notice that inquiry was warranted. (See *Rose*, *supra*, 207 Cal.App.3d at p. 770.) The applicable one-year statute of limitations was therefore triggered on August 5, 2017.

Furthermore, as noted above, Phillip Ocaranza did not need to know the identities of the ambulance company or ambulance company personnel in order timely to bring his

claims arising from the incident at Kaweah Delta Hospital.  He filed his original complaint on July 3, 2018, against "Davita Medical Group," five individuals, and "Does 1 to 10," based on Dana Ocaranza's fall from a Hoyer lift on August 1, 2017.  On August 16, 2018, he followed up with a first amended complaint against Tulare Dialysis and "Does 1 to 10."  The original and first amended complaints listed Doe defendants only as to the claims related to the August 1, 2017 incident at the Tulare Dialysis facility and specified the Doe defendants were agents or employees of the named defendants.  Phillip Ocaranza could have included the claims arising from the August 4, 2017 incident at Kaweah Delta Hospital in the original complaint (as he subsequently did in the second and third amended complaints) and named the ambulance company and ambulance company personnel as Doe defendants as to those claims.  (See § 474 [when the plaintiff is ignorant of the name of a defendant, the plaintiff must file suit against the known wrongdoers, and, when the Doe's true name is discovered, the complaint may be amended accordingly].)[8]  Indeed, a plaintiff need not know "all the facts which prove fault before filing her action.  It is pretrial discovery which brings out the specifics of wrongdoing, i.e., the facts to establish a plaintiff's case." (*Rose*, *supra*, 207 Cal.App.3d at p. 770; *Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 744 (*Vaca*) [" 'Aggrieved parties generally need not know the exact manner in which their injuries were "effected, nor the identities of all parties who may have played a role therein." ' "].)

---

[8]     Sections 474 and 583 work in tandem.  "Section 474 provides that, '[w]hen the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint…, and such defendant may be designated … by any name,' customarily 'Doe,' and 'when his true name is discovered,' the complaint 'must be amended accordingly….'  For its part, section 583.210, subdivision (a), provides that the 'complaint shall be served upon a defendant within three years' of its filing.  Hence, the plaintiff can 'file[] a timely complaint under section 474….  From the time such a complaint is filed,' under section 583.210, subdivision (a), he 'has three years,' and the machinery of discovery, 'to identify … the defendant,' amend the complaint, and 'serve [him] …, effectively enlarging the … limitations period for three years' through the doctrine that the amended complaint 'relates back' to the original one." (*Norgart*, *supra*, 21 Cal.4th at p. 398.)

Here, the evidence shows, moreover, that Phillip Ocaranza could have discovered the identities of the ambulance company and ambulance company personnel involved in the August 4, 2017 incident at Kaweah Delta Hospital by exercising reasonable diligence. A hospital nurse called for the ambulance to transport Dana Ocaranza that day, and she had talked to Phillip Ocaranza in this regard; accordingly, information about the identity of the ambulance service was readily available from the nurse and/or hospital records. Indeed, the record shows this information was readily available from multiple sources, including Kaweah Delta Hospital, the sheriff's office, and Tulare County Consolidated Ambulance Dispatch. Defendant C.H.L./American Ambulance obtained records from the sheriff's office and Kaweah Delta Hospital without difficulty and Phillip Ocaranza eventually requested and obtained the relevant records from Tulare County Consolidated Ambulance Dispatch.

"Although generally the reasonability of a plaintiff's 'belated discovery' is a question of fact, where reasonable minds can draw only one conclusion from the evidence, the question becomes one of law. In that case, summary judgment based on the statute of limitations is proper." (*Rose*, *supra*, 207 Cal.App.3d at p. 770.) Here, there is but one conclusion to be drawn from the evidence: the information available to Phillip Ocaranza in the immediate aftermath of his mother's death on August 5, 2017, indicated he must have suspected wrongdoing on the part of the ambulance company and ambulance personnel involved in the incident, and, in any event, a reasonable person would certainly have done so, causing the one-year limitations period for injuries arising from the fall that occurred at Kaweah Delta Hospital to commence on or around August 5, 2017. Therefore, Phillip Ocaranza's causes of action for injury arising from medical negligence and wrongful death based on medical negligence, against American Ambulance and American Ambulance personnel, asserted for the first time on May 3, 2019, were time barred.

**B.    Equitable Estoppel Does Not Apply to Bar C.H.L./American Ambulance from Asserting the Statute of Limitations as a Complete Defense**

Phillip Ocaranza next argues that C.H.L./American Ambulance is barred by the doctrine of equitable estoppel from raising the statute of limitations as a defense. We disagree.

While equitable tolling " ' "is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended," equitable estoppel "comes into play only after the limitations period has run and addresses … the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." ' " (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383 (*Lantzy*).) Equitable estoppel " ' "is wholly independent of the limitations period itself and takes its life … from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice." ' " (*Ibid.*) "But ' "[a]n estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.'…" Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.' " (*Id*. at 384.)

Here, the doctrine of equitable estoppel does not apply to bar C.H.L./American Ambulance from asserting the applicable statute of limitations as a complete defense. C.H.L./American Ambulance's failure to turn over records pertaining to Dana Ocaranza did not prevent Phillip Ocaranza from timely filing claims arising from the August 4, 2017 incident at Kaweah Delta Hospital; indeed, the information sought was not required for purposes of filing the causes of action at issue. (See *Shaffer v. Debbas* (1993) 17

19.

Cal.App.4th 33, 43 [a defendant will be estopped to invoke the statute of limitations where "the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings"]; *Lantzy*, *supra*, 31 Cal.4th at pp. 384, fn. 18 ["The defendant's statement or conduct must amount to a misrepresentation bearing on the *necessity* of bringing a timely suit; the defendant's mere denial of *legal liability* does not set up an estoppel."]; *Vaca*, *supra*, 198 Cal.App.4th at p. 746, fn. 5 [bare failure to implicate oneself does not warrant equitable estoppel].)  Phillip Ocaranza could have included the claims at issue, in his original complaint, and, to the extent the identities of the relevant ambulance company and ambulance company personnel were not known to him at the time, named them as Doe defendants with respect thereto.  (See *Bernson*, *supra*, 7 Cal.4th at p. 937 ["the plaintiff must avail himself of the opportunity to file a timely complaint naming Doe defendants and take discovery"]; *Vaca*, *supra*, at p. 746, fn. 6.)  His failure to do so was not induced by any actions attributable to C.H.L./American Ambulance.  Accordingly, equitable estoppel is not applicable.  (See *Vaca*, *supra*, at p. 746 ["For a defendant to be equitably estopped from asserting a statute of limitations, the plaintiff must be 'directly prevented … from filing [a] suit on time.' "].)

Phillip Ocaranza further argues, quoting *Vaca*, *supra*, 198 Cal.App.4th at p. 745, that " '[a] defendant may be equitably estopped from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity.' "  This argument is unavailing.  Here, there was no evidence that C.H.L./American Ambulance intentionally concealed its role in the August 4, 2017 incident.  Moreover, plaintiff could readily have discovered the identities of the relevant ambulance company and ambulance personnel by promptly seeking records from Tulare County Consolidated Ambulance Dispatch, Kaweah Delta Hospital, and/or the sheriff's office.  (See *Bernson*, *supra*, 7 Cal.4th at p. 936 ["The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence.…  A plaintiff

may not disregard reasonably available avenues of inquiry which, if vigorously pursued, might yield the desired information."].)  In addition, as discussed above, any concealment of its involvement on the part of C.H.L./American Ambulance did not " 'directly prevent [plaintiff] from filing [his claims] on time.' " (*Vaca*, *supra*, 198 Cal.App.4th at p. 746.)

### C. The Claims Against C.H.L./American Ambulance in the Second and Third Amended Complaints do not Relate Back to the Original Complaint or First Amended Complaint

Finally, Phillip Ocaranza argues the claims against C.H.L./American Ambulance in the second amended complaint, and in turn the third amended complaint, relate back to the original complaint.

When an amended complaint adds new causes of action or new parties, the question arises whether the amended complaint "relates back" to the date of filing of the original complaint.  (See Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group) ¶ 6:730.)  Ocaranza argues the amendments in the second and third amended complaints, through which he added new medical negligence and wrongful death claims against C.H.L./American Ambulance arising from the August 4, 2017 incident at Kaweah Delta Hospital in Visalia, relate back to the original complaint because C.H.L./American Ambulance was named as a Doe defendant in the original complaint.

Section 474 provides, "When a plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and when his true name is discovered, the pleading or proceeding must be amended accordingly."  "The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed.  [Citations.]  A recognized exception to the general rule is the substitution under section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated

in the original complaint.  [Citations.]  If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed."  (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176.)

For the relation back doctrine to apply, the original complaint must have stated a valid cause of action against the newly identified "Doe" defendant; at the time the original complaint was filed, the plaintiff must have been genuinely ignorant of the Doe defendant's identity or the facts giving rise to the defendant's liability; and the amended complaint naming the Doe defendant must be based on the same general set of facts as the original complaint and refer to the same accident and the same injuries.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 6:740, citing *Austin v. Massachusetts Bonding & Ins. Co*. (1961) 56 Cal.2d 596, 600-601; *Eghtesad v. State Farm General Insur. Co.* (2020) 51 Cal.App.5th 406, 415.)

"In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading.  'The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits.  This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading. [Citation.]'  [Citations.]  Additionally, in applying the relation-back analysis, courts should consider the 'strong policy in this state that cases should be decided on their merits.' "  (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 276-277.)

Here, it is clear the claims alleged against C.H.L/American Ambulance in the second amended complaint, based on the incident that occurred on August 4, 2017, at Kaweah Delta Hospital in Visalia, did *not* relate back to the timely filed original

complaint, which only alleged facts and claims related to the incident that occurred on August 1, 2017, at the Tulare Dialysis facility in Tulare. The two incidents at issue were entirely separate and unrelated and encompassed different accidents and distinct injuries. Accordingly, section 474 and the relation-back doctrine does not assist the plaintiff in overcoming the statute of limitations bar as to the untimely new claims asserted against C.H.L./American Ambulance in the second amended complaint.

## DISPOSITION

The judgment is affirmed. C.H.L./American Ambulance to recover its costs on appeal.

SMITH, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

SNAUFFER, J.

23.